# Fisher, Appellant, *v.* The Leader Publishing Company.

*Libel—Newspapers—Charge of crime—Case for the court.*

1. In an action against a newspaper by one of three officials of a charitable institution to recover damages for a publication which was alleged to have charged plaintiff with abortion, and the murder of a young girl resident in the institution, a verdict for the de-

fendant is properly directed, where, although the article intimates that abortion and murder had been committed, there is nothing in it to charge that the girl's death or the abortion was caused by the plaintiff, or that he was an accessory before or after the fact, or had any connection with the crime.

*Practice, C. P.—Amendment of statement—Exception—Act of May 11, 1911, P. L. 279.*

2. Section 6 of the Act of May 11, 1911, P. L. 279, was not intended to apply to every decision made in the course of a trial. This action is intended to apply to final decisions or to such as appear as part of the record by the action of the court itself and not to rulings upon interlocutory matters which would formerly not have become part of the record, in the absence of an exception and a bill sealed by the court.

3. The effect of Sections 1 and 2 of the Act is merely to dispense with the requirement that exceptions shall be allowed by the court. They must still be taken by counsel and noted by the official stenographer.

4. Where a motion to amend a statement of claim is made after the trial, and the court refuses to permit the amendment, the order of refusal may be reviewed under Section 6, of the Act of May 11, 1911, P. L. 279, if the decision of the court appears in the proceedings, although no exception was taken thereto.

Argued November 7, 1912.  Appeal, No. 179, Oct. T., 1912, by plaintiff, from judgment of C. P. Allegheny Co., Jan. T., 1911, No. 900, on verdict for defendant by direction in case of Val. F. Fisher v. The Leader Publishing Company.  Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.  Affirmed.

Trespass for libel.  Before BROWN, J.

The opinion of the Supreme Court states the case.

The court gave binding instructions for defendant.

Verdict and judgment for defendant.  Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Jas. T. Buchanan,* for appellant.

*John S. Weller,* with him *John O. Wicks,* for appellee.

OPINION BY MR. JUSTICE POTTER, January 6, 1913:

This was an action of trespass to recover damages for an allegel libel. In plaintiff's statement of claim the publication of the alleged libelous article was averred, and it was charged that the publication was˜made in order "to bring him (plaintiff) into public scandal, infamy and disgrace, and to cause it to be believed that plaintiff was guilty of murder or abortion, or of being accessory thereto, before or after the fact." Upon the trial a verdict for the defendant was directed upon the ground, as stated by the trial judge, that "assuming that, as to the public at large, a fair, natural reading of the article might convey the meaning that Miss Reed had been murdered, or that an abortion had been committed upon her, there is not the slightest charge in the article that her death or the abortion was caused by Mr. Fisher, or that he was an accessory before or after the fact, or had any connection or relation to the crime." And the trial judge further said, in his opinion refusing a new trial, that the crimes of murder and abortion are nowhere in the article charged against plaintiff, and can by no reasonable inference be imputed to him from a fair reading and interpretation of the whole publication. In order to sustain an action of libel the defamatory words must refer to the plaintiff. The action of the court below was based solely upon its view that the article did not point to, or defame the plaintiff, and was not, therefore, libelous as to him. If the court below was right in its construction of the wording of the publication, it will be unnecessary to consider the assignments of error in detail. The circumstances set forth in the article were alleged to have occurred at the so-called Anti-Cruelty Home, and it appears from the evidence that half a dozen or more officers, directors and agents were connected with this home. The article shows a strained attempt to create a sensational mys-

tery, out of the suggested disappearance of a young girl, and yet it contains a reference to habeas corpus proceedings in which it was shown that the girl was seen alive and well long after the date of the alleged disappearance. The defamatory matter did not refer to any official action of the board of directors. It went no further than to intimate in an incoherent way, that crime may have been committed at the home. It was the province of the court to determine whether the words are capable of the meaning attributed to them: Pitts., Allegheny & Manchester Railway Co. v. McCurdy, 114 Pa. 554; Naulty v. Bulletin Co., 206 Pa. 128. The imputation was not against any certain member or members of a group. The plaintiff was not implicated by name, and we find in the evidence no fact or circumstance by which even those who were familiar with the home and its officers could fairly understand that the plaintiff was intended to be charged in the publication with the crime of murder or abortion. To enable a jury to draw such an inference, evidence of such facts or circumstances should have been given. The publication upon its face would apply equally well to any one of a number of people, and before he could recover damages, it was for the plaintiff to show the application of the words to himself. This he did not do.

In the tenth assignment it is alleged that' the court below erred in refusing to permit plaintiff to amend his statement after the verdict. Counsel for appellee contend that this assignment should not be considered because it does not show that any exception was taken to the refusal of the motion to amend. The Act of May 11, 1911, P. L. 279, provides in Section 6, as follows: "Whensoever the decision of a court of record shall appear in the proceedings of a case, it shall not be necessary, for the purpose of a review of that decision, to take any exception thereto; but the case shall be heard by the appellate court with the same effect as if an exception had been duly written out, signed and sealed by the

court." We think it is manifest that the language in this section was not intended to apply to every decision made in the course of a trial. It is true that rulings upon the admission or rejection of evidence, or in the affirmance or refusal of points for charge, are decisions by the court; but such rulings are elsewhere in the act dealt with specifically. Thus, in Section 1 it is provided that exceptions requested by counsel, to rulings upon the trial noted by the stenographer without allowance by the court, shall have the effect of exceptions "written out, signed, and sealed by the trial judge." And Section 2 dispenses with the requirement of an allowance by the trial judge of exceptions to the charge and answers to points, if made by counsel before the jury retires; and provides that when noted by the stenographer, they shall "have all the effect of exceptions duly written out, signed, and sealed by the trial judge, at the time of the trial." If taken after the jury retires, the exceptions shall be "by leave of the court." The effect of Sections 1 and 2 is merely to dispense with the requirement that exceptions shall be allowed by the court. They must still be taken by counsel, and noted by the official stenographer. Section 6 is evidently intended to apply to final decisions, or to such as appear as part of the record, by the action of the court itself, and not to rulings upon interlocutory matters which would formerly not have become part of the record, in the absence of an exception and a bill sealed by the court. As the motion to amend in this case was not made during the course of the trial, but afterwards, and as the decision of the court refusing to permit plaintiff to amend his statement appears in the proceedings, it was not, under the provisions of Section 6 of the Act of May 11, 1911, necessary for the purpose of review of that decision, to take any exception thereto. An inspection of the amendment as offered, shows that it contains no allegation that the language of the publication charged the plaintiff with the crime of murder or abortion. Nor does it state any

extrinsic facts from which such a charge against the plaintiff can be fairly inferred from the publication. It states that the Anti-Cruelty Home was the residence of plaintiff and of Mr. and Mrs. Kunz, and that they were the three officials about whom the article alleged that public suspicion was closing. But suspicion as to what? Not as to the crime of murder or abortion. The three persons named are referred to as treating Miss Reed as a companion and assistant, rather than as an inmate of the home. Towards the end of the article a serious imputation is made against Mr. Kunz, but his actions are not imputed to the plaintiff.

We can see in the amendment nothing which would relieve the court from the duty of passing upon the construction and meaning of the language of the publication as a question of law. There can be no recovery unless it appears that there was a specific imputation against the person suing. After considerable reflection on the subject, we agree with the conclusion reached by the trial judge, that the imputations in the article did not specifically refer to the plaintiff, and that nothing in the publication justifies the inference that the plaintiff is therein charged with the crime of murder or abortion, or of being an accessory thereto before or after the fact.

The assignments of error are overruled, and the judgment is affirmed.