Commonwealth *v.* Tracey, Appellant.

16

Argued November 17, 1937.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Thomas D. McBride,* for appellant.

*Vincent A. Carroll,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

Opinion by James, J., January 27, 1938:

Harry F. Tracey, appellant, was indicted to No. 603 May Sessions, 1937, on six counts charging various aspects of assault with intent to rob, robbery and robbery with an offensive weapon. In an indictment to No. 604 May Sessions, 1937, containing two counts, appellant was charged in the first count with felonious entry into the office of Gimbel Brothers' garage with intent to steal; in the second count, with a crime of violence while armed with a firearm, contrary to the Act of June 11, 1931, P. L. 497. An indictment to No.

607 May Sessions, 1937, charged a conspiracy to make an assault upon Richmond Johnston and Edward Maury with intent to rob them of property belonging to Gimbel Brothers. Appellant was convicted upon the three indictments. His motion for a new trial was refused and sentence was imposed on the indictment to No. 603 May Sessions, 1937.

The first assignment of error is the refusal of the court below to grant a general exception to the charge. A general exception to the charge is a matter of right and may be taken without allowance by the trial judge and without assigning any reason therefor: Act of May 11, 1911, P. L. 279, §2, as amended by the Act of May 24, 1923, P. L. 439, §1, 12 PS §1197; *Fisher v. Leader Pub. Co.*, 239 Pa. 200, 86 A. 776; *Lodge v. Stone*, 85 Pa. Superior Ct. 164. This is admitted by the Commonwealth. Consequently we will consider the assignments as though a general exception had been granted.

Appellant contends that binding instructions in his favor should have been granted as the evidence was not sufficient to identify him. The only witness called by the Commonwealth to identify appellant and place him at the scene of the crime testified that two masked men, one of whom was appellant, entered Gimbel Brothers' garage, where the witness was employed, and held a gun on him. Appellant wore a cap pulled down over his face with two holes in it for the eyes, which covered the upper part of his face and part of his upper lip leaving his mouth visible. He also wore an overcoat with the collar turned up so that it covered part of his chin. The garage was well lighted by arc lights and both men stood directly under them. Appellant stood three feet back of his accomplice, while the latter held the witness. Both then ran to the cashier's cage where appellant scooped the money out of the till into a bag and then ran with it to the door. This witness

testified he was positive that appellant was the man whom he saw. Whether this testimony amounted to an identification of appellant was a question for the jury. It was for them to determine, under fair and adequate instructions by the court, the facts and the opportunity afforded the witness for identification and the probative weight to be accorded his testimony: *Com. v. Ronello,* 242 Pa. 381, 387, 89 A. 553. *Com. v. Derembeis,* 120 Pa. Superior Ct. 158, 182 A. 85, cited by appellant, was a case of identification by the sound of a voice. That case is not controlling. It appears that there the dubious identification by voice was contradicted by an extremely well supported alibi and that this fact was largely relied on in granting a new trial.

Appellant further contends that there is a fatal variance between the allegata and probata. In Bill No. 603, on which appellant was sentenced, the first and second counts name Richmond Johnston and Edward Maury as the persons assaulted; the third count charges appellant with robbing Gimbel Brothers of $5,000 in the presence of and against the will of the said Johnston and Maury; the fourth, with putting Johnston and Maury in bodily fear and danger of their lives; the fifth, with beating and ill using the said Maury; and the sixth charges appellant with the commission of a crime of violence while armed in violation of law. There is no evidence whatever as to persons named Richmond Johnston or Edward Maury. Nor is there any evidence that the money taken by appellant belonged to Gimbel Brothers. In the course of the trial the district attorney caused an agreement to be noted of record as follows: "It is admitted, ladies and gentlemen of the jury, that the amount involved in the bag was between $6,700.00 and $6,750.00, more or less." At the argument on motion for a new trial, which was argued immediately after the verdict, counsel for appellant pointed out that there was no proof that the money

belonged to Gimbel Brothers or that either Richmond Johnston or Edward Maury were at the scene of the crime. Both the district attorney and the trial judge took the position that appellant's counsel had agreed at side bar that the money belonged to Gimbel Brothers, and that it was taken from the possession of Johnston and Maury. The record of the argument contains the following: "Mr. Stevenson [for defendant]: Now, on the first bill charging the commission of this crime, the bill alleging that the money was the property of Gimbel Brothers, there has been absolutely no evidence that it was the property of Gimbel Brothers, or whose property it was, and the Commonwealth having failed to prove that, and that being an essential element of the case, sir, a conviction, I submit, cannot stand. The Court: I thought that you agreed that there was no necessity for waiting for the man from Gimbel Brothers who had not arrived, and that you would agree that the amount of the money was between $6,700.00 and $6,750.00. Mr. McBride [for defendant]: We did agree as to the amount but there was no agreement as to whose property it was. That is the thing that prompted Mr. Stevenson from the beginning to join in the agreement. I mean there was no agreement placed on record that it was Gimbel Brothers' money or whose money it was. Mr. Carroll [district attorney]: I am amazed at that. Here at side-bar I said that the man from Gimbel's had not arrived yet, and that his testimony would only amount to proving what the amount of the money was and the possession of the money, and you waived the necessity of calling him ...... Mr. Stevenson ...... The bills of indictment set forth a conspiracy not to rob Gimbel Brothers, but to rob these two men [Johnston and Maury] who are named, and there has been absolutely no evidence that any such two men even exist, or that they were ever robbed. Mr. Carroll: Well, may it

be stated upon the record and I stated to your Honor at side-bar in the presence of counsel for the defendant that these two men were subpoenaed from Gimbel Brothers, and that within fifteen minutes I could prove ownership and possession of the money, and I sent Detective Peltz after a man from Gimbel Brothers, and I said that he would be unable to identify the defendant, but he would merely prove possession and ownership of the money ...... Mr. McBride: There was no mention of those two people at all at side-bar. Mr. Carroll: Why wasn't that brought up before the case went to the jury? You knew we had such proof, and I understood you were waiving the necessity for our bringing that testimony in."

Under this state of the record, we cannot accept the version of the court nor of the district attorney as against the version of appellant's counsel. But, in any event, it is clear that there was a misunderstanding as to what proof was waived by appellant's counsel. Under such circumstances, we are not bound to dispose of this appeal solely on what the record shows, as under the Act of June 24, 1895, P. L. 212, 17 PS §192 this court has broad powers in reviewing records that come before it, and in order to prevent what apparently would be a miscarriage of justice if the appellant were discharged, we are of opinion that the interests of both the Commonwealth and appellant would be best served by the granting of a new trial.

Judgments reversed with a venire facias de novo.