McEWEN, Judge,
dissenting.
Appellant and his co-defendant, Marcus Johnson, were both found guilty of murder in the second degree, conspiracy, burglary, and two counts of robbery. While I salute my distinguished colleagues of the majority and the learned trial judge for the fervent sense of fairness that leads them to conclude that the omission of the Kloiber instruction required the award of a new trial to appellant, I am compelled to the conclusions that appellant was justly served by the trial[1] and that justice was well served by the verdict of guilt. Thus, I am precluded from participation in the ruling that appellant must be tried anew. Simply put, the failure of the trial judge to deliver a cautionary identification instruction, whether viewed as judicial omission or counsel ineffectiveness, did not compose Kloiber error, and was certainly not reversible error.
The Pennsylvania Supreme Court in Commonwealth v. Kloiber, 378 Pa. 412, 106 A.2d 820 (1954), cert. denied, 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954), instructed:
Where the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution — indeed the cases say that “‘his [positive] testimony as to identity may be treated as the statement of a FACT Commonwealth v. Ricci, 161 Pa.Super. 193, 195, 54 A.2d 51, 52; Commonwealth v. Sharpe, 138 Pa.Super. 156, 159, 10 A.2d 120. For example, a positive, unqualified identification of defendant by one witness is sufficient for conviction even though half a dozen witnesses testify to an alibi. Commonwealth v. Pride, 143 Pa.Super. 165, 167, 18 A.2d 879; Commonwealth v. Sal-dutte, 136 Pa.Super. 52, 56, 7 A.2d 121; Commonwealth v. Ricci, 161 Pa.Super. 193, 54 A.2d 51, supra; Commonwealth v. Tracey, 130 Pa.Super. 15, 196 A. 549; Commonwealth v. Lindner, 133 Pa.Super. 196, 2 A.2d 518; Commonwealth v. Sharpe, 138 Pa.Super. 156, 10 A.2d 120, supra. On the other , hand, where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with CAUTION.
Commonwealth v. Kloiber, supra, 378 Pa. at 422-26, 106 A.2d at 826-827 (emphasis added). Scrutiny of the charge to the jury reveals that the trial court pursued a straight line course with regard to the issue of identification since it refrained both from suggesting to the jury that the identification had been the subject of such evidence as to establish identification of appellant as fact, and refrained, as well, from suggesting to the jury that the identification evidence should be received with caution. The decision of the trial judge to so refrain was surely — in view of the stature of the trial judge — a consequence of sound instinct and extended reflection. Thus, the decision should not be subjected to post-verdict hindsight of new counsel and a judicial misgiving which exceeds scrupulosity.
Two particular elements of this case dominated the extended reflection inspired by the prominence of the judges who would grant appellant a new trial, and impel me to the conclusion that the omission of the Kloiber instruction was not error and was, in any event, certainly not prejudicial error. First, the challenged identification was the subject *572 of intense cross-examination so that the jury itself had ample basis for such reservations as beset the trial judge, but the jury proceeded, nonetheless, in unanimous fashion, of course, to their verdict of guilt. Second, the claim of appellant that the eyewitness testimony was not positive rings rather hollow in view of the testimony of trial counsel, at the evidentiary hearing, that the lineup in which appellant was to appear was cancelled because appellant told counsel, “I know this guy [the eyewitness] and he knows me.”[2] The concerned reflection provided this appeal inspired, as well, recollection of thoughts expressed a decade ago, also in dissent. Those notions, while presented in a civil case, are, nonetheless, surely relevant to the instant decision of the trial judge to undo the verdict of the jury that appellant was guilty of murder and robbery:
The founders concluded that a band of the citizenry — peers, says the Magna Carta— is naturally suited to the task of resolving factual disputes, whether the difference in testimony be innocent or influenced by personal interest; in addition, of course, it is an obvious and certain fact that the court room cause — whether it be of an accused or of a litigant — is, if not prudently never left to the sovereign, always more wisely entrusted to the people than to the government or any of its branches.
Once we acknowledge that the value of the jury system is not mere premise but fact, it naturally follows that the verdict of a jury should be considered to be controlling and final. While it is undisputed that a safety valve is necessary and that a trial judge should be able to reject a verdict, that safety valve should be triggered only when there is a gross disparity between the verdict and the evidence or there has been gross and harmful error. Neither of those tests are here met.
[[Image here]]
The fundamental purpose of the instructions by a court is to express to the jury in general, survey fashion a basic outline of the applicable principles of law so that the jury might have the benefit of certain essential rules as the members assort the testimony, reflect upon the evidence and assemble a verdict.... The most able of trial counsel will in a candid moment concede that the true value of the charge is the fertile field provided for assertion of error during appellate review rather than the guidance and direction sought to be supplied to the jury. If the charge of the court is to achieve the goal of assisting the jury and is not to be considered as a credit balance available for redemption in the event of an adverse verdict, then a verdict should be final, absent a gross shortcoming in the trial — specifically, as earlier noted, unless there is a gross disparity between the verdict and the evidence or there has been gross and harmful error.
In essence, I am of a mind that both the trial judge and the jury performed quite well and that, therefore, the verdict should stand.
*573 Saylor v. Rose, 319 Pa.Super. 560, 570, 466 A.2d 686, 690-691 (1983) (McEwen, J., dissenting) (emphasis in original).
And so it is that I urge that the order granting appellant a new trial be reversed.

. The co-defendant of appellant in a statement to the police implicated appellant as the individual who planned the robbery and carried out the beating of the murder victim. The police officer testified at the trial regarding the statement of the co-defendant, but all reference to appellant was redacted. The trial judge cautioned the jury as follows:
You may consider that [the confession of Marcus Johnson which also implicated appellant as a perpetrator and the actual killer] only against Marcus Johnson, to the extent that you accept his testimony. You may not at this point consider it as any evidence at all against Mr. Curtis Simmons, nor may you speculate at all as to how this statement pertains to Mr. Curtis Simmons.

. As trial counsel testified at the post-verdict evidentiary hearing:
THE COURT: ... Initially you said that you had information that your client knew the witness Johnson, Frederick Johnson.
THE WITNESS [TRIAL COUNSEL]: Oh, yes. That was told to me by Mr. Simmons well before even the preliminary hearing.
THE COURT: And that was the reason you didn’t pursue a lineup motion, there was no sense?
THE WITNESS: A lineup was held as to one witness or the purpose of it if was to have Mr. Morris, who was the exterminator, who was present at the time of the incident, and that’s why we wanted a lineup for him. And he, in fact, did not identify anyone at the lineup, either my client or anybody. He was unable to make an identification.
The Commonwealth brought in Frederick Johnson that evening at the Detention Center and I had had a prior conversation with Mr. Simmons and he was quite candid. He said I know this guy and he knows me, so I had told the detective' not to bother to have him in the lineup, (emphasis supplied)
And, you know, there was no point in disputing whether he could make an identification. It wouldn’t because of a lineup or a photo array.
THE COURT: It was because of the motive to lie from your perspective?
THE WITNESS: Motive to lie was, yes. It is my feeling I would request a Kloiber charge where people are strangers and there has been a misidentification at one point. But that wasn’t really the factual pattern in this case.