## Battisfore v. Triangle Publications, Inc.

*Jerome J. Verlin,* for plaintiff.

*Harold E. Kohn,* for defendant.

McDEVITT, J., May 2, 1969.—On September 15, 1967, The Inquirer, Philadelphia's morning newspaper of wide circulation, published the following story[1] on its front page under the large type headline "Local 107 Aides Reap Fees On $25 Million Deposits":

"Teamster Local 107 officials have been sowing the union's $25 million trust fund among local banks and reaping 'finder's fees' of up to $250,000 a year for their personal gain, The Inquirer has learned.

"According to one source, Teamster officials have split the trust funds into certificates of deposit of $1 million each. Banks compete for these funds and award a finder's fee of one percent when they are deposited for a minimum of one year.

"When the year is up, the money is withdrawn, placed in another bank and another one million certificate of deposit finder's fee goes into an official's pocket.

"The banks reinvest the money and usually get upwards of a six percent return and a profit is turned all around.

"District Attorney Arlen Specter, when questioned on the practice, said he would have no comment until his investigators have completed their investigation.

"However, the 'finder's fee' income should properly be classed as income into the trust fund itself and be available to the general benefit of the members, another legal source said.

"Specter said that union trust funds accounted for 'a substantial part of the wealth of this country today'.

---

[1] The author, according to the byline, was Thomas Werner, of The Inquirer staff.

"He added that "the vast majority of these (Local 107) guys are law-abiding citizens".

. . . . . . . . . .[2]

Edward Battisfore brought the present action against Triangle Publications, Inc., the publisher of The Philadelphia Inquirer, and against The Inquirer to recover damages on the ground that the article libeled him. Defendants filed 11 preliminary objections to the complaint; these objections were listed under three different headings: demurrer, motion to strike, and motion for a more specific pleading, and are, to a degree, repetitious.

Defendants contend that plaintiff has failed to state a cause of action because the newspaper article complained of does not identify plaintiff by name and plaintiff has failed to allege extrinsic facts whereby it would appear that plaintiff's identity was or could have been ascertained by any person reading the article. We believe that plaintiff has stated a cause of action, but defectively, and we will accordingly permit plaintiff to amend his complaint.[3]

The article does not contain any reference to plaintiff by name. Furthermore, nowhere in the complaint is it stated, in so many words that plaintiff is "a trustee of Local 107" or "an aide of Local 107" or an "official of Local 107". Although plaintiff identified himself in various ways in the very first paragraph of the complaint, not once in the whole complaint did he flatly allege his status in the union or even that he was a member of the union.

Farrell v. Triangle Publications, Inc., 399 Pa. 102 (1960), is controlling authority on several of the is-

---

[2] Fifteen paragraphs relating other news (all bad) about current teamster activities have been omitted because they are not directly relevant to the main issues here raised.

[3] In this regard we will sustain defendants' ninth objection under "Motion for a More Specific Complaint", and dismiss the other two objections reaching the same defect: the second, under "Demurrer", and the fifth, under "Motion to Strike".

sues herein involved. We have taken the trouble to examine the "paper book" in Farrell. In that case, a former commissioner of Upper Darby Township brought an action for libel against Triangle based upon a story printed in The Inquirer that, in effect, accused a "number of township commissioners" of Upper Darby of graft. The newspaper article itself mentioned that "13 commissioners, former office holders" were being investigated by the district attorney's office. Farrell in his complaint flatly alleged that he was a commissioner and gave the dates of his term of office (paragraph 4 of complaint); moreover, he specified that he was a commissioner during the period of the activities purportedly described in the article (paragraph 9 of complaint).

By contrast, in the present case, plaintiff has relied on innuendo and inference to establish that he was one of the group maligned in the newspaper article. He also leaves the number of the maligned group to be established, presumably, by judicial notice. The *inference* that plaintiff is, or was, a teamster official of some kind is undeniably raised by plaintiff's allegations in paragraph 3 of the complaint;[4] the only problem with the allegations of paragraph 3 is that they are statements of conclusions rather than of facts. The same inference is further strengthened by the allega-

---

[4] "The said defendants, intending to injure plaintiff and to deprive him of his good name, fame, credit and reputation did on the 15th day of September, 1967 falsely, maliciously, wickedly and illegally print and publish in the said Philadelphia Inquirer, an article of and concerning plaintiff and reflecting upon his character, which article was false, scandalous, malicious, defamatory and libelous, and which said article was titled, "Local 107 Aides Reap Fees on $25 Million Deposits", a copy of said article in its entirety is herein incorporated by reference and marked Exhibit "A"; thereby meaning that the plaintiff had committed the crime of embezzlement or conversion of union funds, or violation of various statutes of the Internal Revenue Code or violation of his fiduciary relationship as a trustee".

tions of paragraph 5, which is, however, infected with the same vice.[5] Nevertheless, considering the complaint in its entirety, we believe that plaintiff can amend it so as to directly allege his exact connection with Local 107 and the Teamster Union and to state the number of persons who hold similar positions. Since there is a possibility that plaintiff can, in this respect, validly state his cause of action, we shall grant him leave to amend the complaint.[6]

The published material constituted libel per se. The allegations of the news article are to be taken in the common, everyday sense that the public would ordinarily ascribe to them.[7] Read thus, the article fairly implies that certain union officials are earning a dishonest dollar through their placement of union funds and that these officials are lining their own pockets with money that should properly go into the union's treasury. Such a conclusion is reinforced by the hint that the district attorney is investigating the practices of the union officials, obviously with an eye toward prosecuting their illegal activity.

If plaintiff can successfully amend his complaint as hereinbefore indicated, the publication will be actionable per se with regard to him. Therefore, no allegation of special damages need be set forth in the complaint.[8]

---

[5] Paragraph 5 reads as follows: "The plaintiff had never, at any time, been guilty of the crime of embezzlement or conversion or of violation of various statutes of the Internal Revenue Code or violation of his fiduciary relationship as a trustee, nor was he ever an accessory to, nor aided and abetted in such criminal acts, nor was he ever guilty of any other violation of law, but he has at all times been a peaceable and law-abiding inhabitant of the several communities in which he has resided from the day of his birth to the present time".

[6] See Sun Ray Drug Co. v. Lawler, 366 Pa. 571 (1951); Stevens v. Doylestown Building & Loan Association, 321 Pa. 173 (1936).

[7] See Boyer v. Pitt Publishing Company, 324 Pa. 154 (1936), and Thompson v. Farley, 35 D. & C. 2d 157 (1964).

[8] See Holland v. Flick, 212 Pa. 201 (1905).

Plaintiff need not plead which specific words in the article are defamatory.[9] The clear implication, moreover, of paragraph 3 of plaintiff's complaint is that the headline and first part of the article are the offending material.

That defendant's publication of the article in question was privileged is a matter of defense and cannot be asserted by preliminary objection.[10] Under the Act of August 21, 1953, P. L. 1291,[11] defendant has the burden of proving the privileged character of the occasion on which the allegedly defamatory matter was published. Since privilege is an affirmative defense, it should be raised by way of "new matter" in defendant's answer. For the same reasons, we find no merit in defendant's objection that plaintiff's action is barred by the Constitutions of the United States and of the Commonwealth.

Finally, plaintiff's claim for damages "in excess of $250,000.00" is in patent violation of Pa. Rule of Civil Procedure 1044 (b).[12] Therefore, defendant's objections 7 and 8 will be sustained, with leave to plaintiff to amend his ad damnum clause so as to conform to Pa. R. C. P. 1044 (b).

ORDER

And now, May 2, 1969, upon consideration of defendant's preliminary objections to plaintiff's complaint, the court rules as follows: (a) Defendants' first, second, third, fourth, fifth, sixth, tenth, and eleventh preliminary objections are dismissed; (b) defendants' seventh, eighth, and ninth preliminary objections are sustained. Plaintiff is granted leave to file an amended complaint within 20 days of the date of this order.

---

[9] Thompson v. Farley, supra.

[10] Id., at page 162, and cases therein cited.

[11] 12 PS §1584a (2) (b)

[12] See Williams v. Triangle Publications Inc., 19 D. & C. 2d 226 (1959).