Farrell, Appellant, v. Triangle Publications, Inc.

Argued November 23, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*James Francis Lawler*, for appellant.

*Harold E. Kohn*, with him *Louis G. Hill*, and *Dilworth, Paxson, Kalish, Kohn & Dilks*, for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, April 19, 1960:

On January 29, 1958, The Inquirer, Philadelphia's morning newspaper of wide circulation, published the following under the headline "$900,000 TRASH DEAL 'SPLIT' FOR COMMISSIONERS PROBED":

"The Delaware county District Attorney's office yesterday began investigating a report that a $900,000 slice of the canceled $1,600,000 Upper Darby incinerator deal was earmarked for division among a number of township commissioners and others.

"This startling development arose on the eve of the opening today of the Delaware county grand jury investigation into the abortive deal that was quickly dropped after an expose by the Inquirer. Investigators studying the report of the $900,000 jackpot declined to elaborate, but it was learned they would question the 13 commissioners, former office holders. . . .

"The report stemmed from a conversation at an Upper Darby social event in which an attorney heard

the 'jackpot' story from a relative of one of the principals in the scandal. The lawyer turned over the information to J. Harold Hughes and Clifton J. McGovern, assistant district attorneys conducting the grand jury investigation. Investigators said the story came from a respected attorney.

"After hearing the story, the attorney told his informant he felt obliged to take it to the District Attorney. The informant reportedly agreed. The informant's identity was not disclosed but it was said that person now was on vacation in Florida . . .".

John H. Farrell, the plaintiff, was at the time one of the Commissioners of Upper Darby Township, of whom there were thirteen. Farrell brought this action against Triangle Publications, Inc., the publisher of the *Philadelphia Inquirer*, for damages on the ground that the article libeled him. The defendant filed preliminary objections to the complaint, asserting that it failed to state a cause of action. The court sustained the preliminary objections and entered judgment for the defendant. This appeal followed.

The sole question involved is whether the article referred to Farrell as an object of its charges and insinuations with sufficient particularity to invest him with a cause of action for libel. That the article was defamatory cannot be seriously disputed.

Where a defamatory publication or utterance is directed toward a class or group whose membership is so numerous that no one individual member can reasonably be deemed an intended object of the defamatory matter, no cause of action for libel or slander arises therefrom.[1] For example, if someone should speak or write defamatorily of all of the members of one of the professions, such as the law, medicine or

---

[1] See *Comes v. Cruce*, 85 Ark. 79, 107 S.W. 185 (1908) ; *Service Parking Corp. v. Washington Times Co.*, 92 F. 2d 502 (1937). See also 33 Am. Jur. 182, Libel and Slander, sec. 192.

ministry, no particular lawyer, doctor or minister could maintain a personal action for the defamation for the reason that no one would be sufficiently identified as an object thereof to justifiably warrant a conclusion that his individual reputation had been substantially injured. Where, however, a defamatory publication or utterance is directed toward a comparatively small class or group all of whose constituent members may be readily identified and the recipients of the defamatory matter are likely to identify some, if not all, of them as intended objects of the defamation, an individual member of the group may sue for the damages done his reputation thereby.[2]

If a newspaper should publish defamatory statements about a person by referring to him by name, it would, of course, lay itself open to liability for damages to the injured person in a suit for libel. That being so, it would indeed be irrational, as well as unconscionable, to permit a publication to escape responsibility under the libel law simply by confining the objects of its defamation to "a number of", "some of", or even to "one of" a relatively small group of persons all of whom are readily identifiable by recipients of the defamatory matter. To hold otherwise would be to make liability for libel depend upon the form of the defamation rather than its content.

---

[2] See *Fenstermaker v. Tribune Publishing Co.*, 12 Utah 439, 43 Pac. 112 (1895); *Welch v. Tribune Pub. Co.*, 83 Mich. 661, 47 N.W. 562 (1890); *McClean v. New York Press Co.*, 64 Hun. 639 (N. Y., 1892); *Schomberg v. Walker*, 132 Cal. 224, 64 Pac. 290 (1901); *Bornmann v. Star Co.*, 174 N. Y. 212, 66 N.E. 723 (1903); *Weston v. Commercial Advertiser Ass'n.*, 184 N. Y. 479, 77 N.E. 660 (1906); *Tobin v. Alfred M. Best Co.*, 120 App. Div. 387, 105 N. Y. S. 294 (1907); *Children v. Shinn*, 168 Iowa 531, 150 N.W. 864 (1915); *Gross v. Cantor*, 270 N. Y. 93, 200 N.E. 592 (1936); *Marr v. Putnam*, 246 P. 2d 509 (Ore., 1952). See also 53 C.J.S. 341, Libel and Slander, sec. 224, and Joseph Tanenhaus, "Group Libel," 35 Cornell Law Quarterly, 261, cases listed at pp. 264-65.

On the other hand, if it is clear that, because of the large number in the group referred to in the printed matter, or for any other reason, a recipient of a defamatory publication could not reasonably conclude that it referred to the particular person claiming to have been libeled thereby, the complaint should be dismissed for failure to state a cause of action. But, if the defamatory publication can reasonably be interpreted as referring to a particular complainant, whether recipients did so conclude is for a jury to determine.[3]

The Restatement, Torts, §564, states the principle as follows: "*Applicability of Defamatory Communication to Plaintiff*: A defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands it as intended to refer."

*Illustrations*: "2. A newspaper publishes the statement that some member of B's household has committed murder. In the absence of any circumstances indicating that some particular member of B's household was referred to, the newspaper has defamed each member of B's household."

---

[3] *Weston v. Commercial Advertiser Ass'n.*, 184 N. Y. 479, 77 N.E. 660 (1906); *Mann v. Life & Casualty Insurance Co. of Tennessee*, 132 S. C. 193, 129 S.E. 79 (1925); *National Refining Co. v. Benzo Gas Motor Fuel Co.*, 20 F. 2d 763 (8th Cir., 1927), cert. denied, 275 U. S. 570, 48 S. Ct. 157, 72 L. Ed. 431 (1927); *Powell v. Young*, 151 Va. 985, 144 S.E. 624 (1928); *Kehoe v. N. Y. Tribune*, 139 Misc. 420, 247 N. Y. S. 695, affirmed, 235 App. Div. 612, 255 N. Y. S. 839 (1931); *Horton v. Georgian Co.*, 175 Ga. 261, 165 S.E. 443 (1932); *Morrison v. News Syndicate Co.*, 247 App. Div. 397, 287 N. Y. S. 451 (1936); *MacFadden's Publications v. Turner*, 95 S.W. 2d 1027 (Tex. 1936); *Memphis Commercial Appeal v. Johnson*, 96 F. 2d 672 (6th Cir., 1938); *Jackson v. Consumer Publications*, 256 App. Div. 708, 11 N. Y. S. 2d 462 (1939); *Roth v. Greensboro News Co.*, 217 N. C. 13, 6 S.E. 2d 882 (1940); *Coats v. News Corp.*, 197 S.W. 2d 958 (Sup. Ct., Mo., 1946); *Klein v. Sunbeam*, 94 A. 2d 385 (1952, Sup. Ct., Del.).

One of the most noted cases of group libel in recent years is *Gross v. Cantor*, 270 N. Y. 93, 200 N.E. 592 (1936). In that case, Eddie Cantor, the singer-comedian, had written an article which was published in the magazine "Radio Guide" in which he inveighed against "those New York radio editors who are experts at logrolling, who use their columns for delving into personalities that have nothing to do with radio and whose various rackets are a disgrace to the newspaper profession." The author further asserted that "There is but one person writing on radio in New York City who has the necessary background, dignity and honesty of purpose." He did not, however, name the person so exonerated of the charges. A New York radio editor sued Cantor for damages in an action for libel and obtained a judgment which the New York Court of Appeals affirmed. In its opinion, the court quoted with approval from *Ryckman v. Delavan*, 25 Wend. 186, 202 (N. Y., 1840), as follows: "But if the words may by any reasonable application, import a charge against several individuals, under some general description or general name, the plaintiff has the right to go on to trial, and it is for the jury to decide, whether the charge has the personal application averred by the plaintiff."

A case in this State, in no way distinguishable from the present case so far as the sufficiency of the plaintiff's complaint, in stating the cause of action, is concerned, is *Egan v. Dubois Printing & Publishing Company*, 64 Pa. Superior Ct. 115 (1916). In the *Egan* case, a newspaper printed a defamatory story about "a number of [former] national organizers" for the United Mine Workers of America who were in DuBois. The plaintiffs in the action were two such organizers, but were not specifically referred to or identified in the article. The Superior Court held (at page 122) that, "Whether the descriptions of the persons referred

to in the article applied to the plaintiff[s] was a question of fact properly submitted to the jury." Judgment for the plaintiff was reversed, and a new trial ordered, but for a reason not presently material. That the defamation was referable to the plaintiffs, who had not been identified by the article, is implicit from the portions of the charge embraced by the fourth and fifth assignments which the Superior Court impliedly approved, viz., that the reference was sufficient ". . . if you [the jury] are of the opinion from the evidence produced in this case that the description in these articles were such, either intentionally or by want of due diligence in ascertaining the facts as to point to these plaintiffs, and to suggest by natural and reasonable inferences to the public that they were the parties referred to, . . ." or, stated otherwise, "If you [the jury] find that these articles are such as claimed by the plaintiffs, that the plaintiffs were so described that the public naturally and reasonably thought they were referred to, . . . ."

Counsel for defendant in the instant case points out that a reading of the paper books discloses that the plaintiffs in the *Egan* case were the only former national organizers for the United Mine Workers of America in DuBois at the time of the publication, and argues, from that, that the defamatory statements must have referred to the plaintiffs. The significant thing is, however, that the fact that the plaintiffs were the only former national organizers in DuBois *did not appear by the complaint.* In other words, so far as the pleadings were concerned, there might have been any number of such former organizers in DuBois. That the only ones were, in fact, the two plaintiffs was developed by evidence at trial. It was of no moment, therefore, to the ruling of the Superior Court on the sufficiency of the reference in the defamatory article to include the plaintiffs.

Here, the ordinary reader of the *Philadelphia Inquirer* could naturally and reasonably infer that the defamatory publication referred to the plaintiff, among others. Certain it is that a substantial number of readers, particularly those resident in Upper Darby Township, knew that the plaintiff was one of the thirteen commissioners of the township. Moreover, it is not unreasonable to conclude that many other Upper Darby readers of the *Inquirer* who, prior to the defamatory article, had not known the identity of all of the township's commissioners, were impelled by the scandalous nature of the charges to make inquiry and find out who the commissioners were—a process which would almost inevitably lead to connecting the plaintiff's name with the alleged corruption in office.

The fact that the article did not state that all of the commissioners of the township were parties to the reported corrupt deal could not operate to exclude the plaintiff from being one of the relatively small and officially designated group to which the article indisputably made reference. The publication also declared that the district attorney's office would question all thirteen of the commissioners, one of whom was the plaintiff. That statement at least implied that, in the mind of the district attorney, none of the commissioners was above suspicion of knowledge, guilty or otherwise, of the alleged "split". The effect of the article could be to impugn the integrity and honesty of the plaintiff in the estimation of the public. Even persons favorably disposed toward him might, upon reading the article, reasonably conclude that the plaintiff was one of the commissioners referred to as being corrupt. This would be a sufficient maligning of his reputation to give him a cause of action for libel.

On preliminary objections to a complaint for libel on the ground that it fails to state a cause of action, it was the duty of the court to determine whether the

words employed were defamatory or capable of a defamatory meaning, and if so, whether a recipient of the communication could reasonably conclude that it referred to the plaintiff. We hold that, under the facts pleaded, the trial court should have concluded as a matter of law that the publication was defamatory and that the plaintiff was sufficiently referred to so that a recipient might reasonably conclude that the plaintiff was an object of the defamation. Whether recipients did so conclude is a question for a jury to determine. The court was therefore in error in dismissing the complaint and in entering judgment for the defendant.

The judgment is reversed and the complaint reinstated with leave to the defendant to file answer thereto within twenty days of the date of the lower court's receipt of the remanded record.

Mr. Justice BELL and Mr. Justice MUSMANNO dissent.