Schonek, Appellant, *v.* W. J. A. C., Inc.

Argued October 2, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Caram J. Abood,* with him *James A. Ashton,* and *Ashton & Stitt,* and *Green, Gibson & Abood,* for appellant.

*Morton Meyers,* with him *James E. Mayer,* for appellee.

OPINION BY MR. JUSTICE COHEN, November 11, 1969:

This is an appeal from the entry of a judgment in favor of the defendant in an action of trespass for slander. The facts are as follows:

For years, consolidation of the City of Johnstown with surrounding municipalities has been advocated to help Johnstown recover from its economic problems. During the late summer of 1966 a group of interested citizens formed the Improve Johnstown Association (IJA) to promote consolidation and selected the Borough of Westmont as the first objective. They employed William Buckingham as coordinator and promoter, and he prepared a four page plan for consolidation. This was given on September 6, 1966, to Richard Mayer, chairman of IJA and a director of WJAC, Inc. Since Mayer desired to make changes in the plan, Buckingham discarded all copies except two or three which he retained for correction. No copies were distributed to anyone, and after a corrected document was distributed to IJA members on September 9, Buckingham destroyed the remaining copies of the original document.

About a week later, Buckingham prepared a three page document entitled "Targets, Tactics and Time Tables" for distribution to IJA. At a later date, he prepared sixteen separate typewritten documents containing instructions to the various committees which were to work to promote consolidation.

The members of IJA appeared openly and affixed their names to campaign documents and advertise-

ments. A group called the Truth Committee was formed which opposed consolidation. Its membership was not disclosed, and campaign documents and advertisements appeared without the names of any sponsors.

On November 12, 1966, residents of Westmont received in the mail a document containing nine printed pages. The first was as follows:

"WHO IS DECIDING YOUR FUTURE?

"This committee has secured the attached secret document, and it has been reproduced so that you may understand for yourself how a few men are trying to change the future of Westmont Borough." It was signed the Truth Committee and attached to it were (a) a copy of the first three pages of Buckingham's document of September 6, (b) a copy of the three pages entitled "Targets, Tactics and Time Tables" and (c) a copy of the instructions of Buckingham to two of the sixteen committees. There is much underlining in the document which does not appear on its original.

The Truth Committee's document was a subject of much discussion in the community. Ron Stephenson, a WJAC newsman, sought Mayer's approval of his comments on the subject prior to his November 14 broadcast, and Mayer suggested that he add that the document had been "doctored" and "pilfered." This was done, and Stephenson's commentary was as follows: "This afternoon a spokesman for the Improve Johnstown Association said the information circulated by the anti forces was a 'doctored report' of the real thing. . . . The people of Westmont, it would seem, have every right to know who comprises the so-called Truth Committee. And who is putting up the money to fight consolidation? And for what reason or reasons? At this point, it would seem reasonable to ask: Are the angels of the anti-consolidation drive the same angels who financed the campaign of a well known area

elected official? Are they the same angels who backed the move to defeat the Mayor-Council form of government in the Johnstown city election last week? Why do these angels hide behind a cloak of anonymity? The pilfered confidential document of the Improve Johnstown Association contains a time table for the consolidation drive."

In his deposition Stephenson stated the purpose of his comment was to force the leadership of the Truth Committee into the open; that he believed Schonek was an organizer of the Committee; and that he did not believe and did not intend to imply that the plaintiff had pilfered any document.

On November 15, defendant broadcast the following story: "In a byline story in this afternoon's edition of the Johnstown Tribune Democrat, suburban affairs writer, Robert Seffick reveals the leaders of the opposition to Westmont-Johnstown consolidation. Two area business men who reside in Westmont admit they are leading the opposition against consolidation. They are W. E. (Wid) Schonek of 843 Franco Ave. and Frank Pristow of 701 Tioga St. Mr. Schonek is owner-operator of Dick's Automotive in Johnstown and is affiliated with a number of other businesses locally and out of state. Mr. Pristow is the owner of Pristow Motor Sales along the Johnstown-Windber Road, the District's franchised Oldsmobile dealer. Both men admitted they financed the recent successful campaign of State Senator Richard Green who defeated John Haluska by a whopping majority. Both men say they spent money to defeat the charter commission recommendation of a mayor-council form of government in the City of Johnstown in last week's election. And both say they are now spending money and soliciting contributions to defeat the consolidation movement." Plaintiff denied having pilfered the document. He said

it had been left by an unknown person at a fire hall and then given to him by other persons.

The lower court found that statements as to "pilfering" and "doctoring" were not defamatory of plaintiff; that even if they were libelous, they were not libelous per se and that plaintiff could not recover because he alleged no special damages; and that the statements were constitutionally protected as free speech. It thus granted defendant's motion for summary judgment.

Under our analysis of the case, it is not necessary to decide whether plaintiff was a "public figure" or whether the defendant acted permissibly in light of the tests enunciated in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967). Also, the fact that the complaint should have been in libel rather than in slander, *Purcell v. Westinghouse Broadcasting Co.*, 411 Pa. 167, 191 A. 2d 662 (1963); Restatement 2d, Torts, Tentative Draft 11, §568A (1965), is not the basis of our decision.

The essence of the plaintiff's amended complaint is that the defendant has defamed him by accusing him of "pilfering" and "doctoring" a campaign document of the pro-consolidation forces. It is the duty of this Court first to determine whether the communication complained of is capable of the defamatory meaning ascribed to it by the plaintiff. *Volomino v. Messenger Publishing Co.*, 410 Pa. 611, 189 A. 2d 873 (1963); *Cosgrove Studio and Camera Shop, Inc. v. Pane*, 408 Pa. 314, 182 A. 2d 751 (1962); *Bogash v. Elkins*, 405 Pa. 437, 176 A. 2d 677 (1962). As to the charge of "pilfering" we will assume that an accusation of such would tend to blacken one's reputation or expose him to public hatred, contempt or ridicule or injure him in his business or profession. That is not all that is required, however. "Defamatory words, in order to be

actionable, must refer to some ascertained or ascertainable person, and that person must be the plaintiff." 22 P.L.E. Libel and Slander, §17 (1959). "The fact that the plaintiff is not specifically named . . . is not controlling. A party defamed need not be specifically named, if pointed to by description or circumstances tending to identify him." *Cosgrove,* supra at 319.

The defect in the plaintiff's case is that the communications in question in no way charge the plaintiff with having pilfered the document. As the lower court stated: "The broadcast did suggest that the Truth Committee sent out a document which had been pilfered and doctored by somebody. It is true that the broadcast referred to certain 'angels' financing the activities of the Truth Committee, but this statement contains no implications that 'angels' were the persons who . . . pilfered the document." The communications only stated that plaintiff was a leader of the Truth Committee and that the Committee had made use of a pilfered document. A reasonable man could find no basis for the plaintiff's allegation that the statements accused him of the pilfering.

Plaintiff also can not succeed on the theory that the statements defamed a group of which he was a part. *Farrell v. Triangle Publications, Inc.,* 399 Pa. 102, 159 A. 2d 734 (1960). There are two reasons for this. First, the communications do not charge the group with having pilfered the document. Again, the charge is only that the group made use of it, not a defamatory statement. Secondly, even assuming such a charge was made—"Where a defamatory publication or utterance is directed toward a class or group whose membership is so numerous that no one individual member can reasonably be deemed an intended object of the defamatory matter, no cause of action for libel or slander arises therefrom." *Farrell,* supra at 104.

84

In plaintiff's own deposition he indicated that the Truth Committee consisted of a large number of people, enough to more than fill the Westmont Fire Hall—possibly several hundred. In such a situation the statements could not be reasonably understood to have any personal application to any individual. Restatement 2d, Torts, Tentative Draft No. 11, §564A (1965); 22 P.L.E. Libel and Slander, §17 (Supp. 1969).

As to the charge of "doctoring," it must be remembered that truth is a complete defense to a libel action. *Schnabel v. Meredith,* 378 Pa. 609, 107 A. 2d 860 (1954). Webster's New International Dictionary, Unabridged, 2d Ed. (1957), defines "doctor" as "to adapt to an end or use by subjecting to deceptive alteration or to special treatment, to tamper with." It certainly seems that when substantial parts of the original documents are deleted and underlining is done to draw attention to various parts that the document has been tampered with and subjected to special treatment so as to adapt it to a particular purpose. Therefore, because we have decided that the claim of "doctoring" was true, it is not necessary to decide whether the defendant charged this particular plaintiff with having done the "doctoring."

We hold that the court below properly entered judgment for the defendant.

Judgment affirmed.