## Klauder v. Philadelphia Newspapers, Inc.

*Joseph D. Shein*, for plaintiffs.

*Harold E. Kohn*, for defendants.

McDEVITT, J., October 15, 1973.—This is an action of libel based on a series of articles in the Philadelphia Inquirer between November 16 and December 5, 1971, charging pervasive and systematic corruption in the Philadelphia Police Department. The accounts were heralded by such headlines as the following: "A Three

Month Inquirer Investigation Has Produced Evidence of Widespread Police Corruption," "Gotta Pay Everybody, West Philadelphia Bookie Says," "The Police Payoff System: Here's Who Gets Paid On Certain Dates According to X-Policemen," "Evidence Of Police Corruption Calls For Independent Inquiry," "Inquirer Photographer Snaps Policemen On Regular Visits to Bookie Hangout," "A Constant Pattern Emerged During The Inquirer 3 Month Investigation Into Reports of Widespread Police Corruption In Philadelphia," "Reporter Watches Cop Enter Bookie Bar On Payoff Day," "Coming Sunday: A High Ranking Police Officer Confirms Wide Corruption," "A Police Captain Speaks Out On Corruption . . . Systematic Payoffs Have Been Going On For Years At Gambling Spots But Drugs Is A Different Picture," "The Police Corruption Story—Corruption, What It Means to a City," "Corrupt Police 'Not New' To Public, Experts Say They Imperil Society."

Allegedly libelous statements in the articles include the following: "MANY OFFICERS from patrolmen to high-ranking officers are systematically paid by bookies to permit gambling;" "MOST PATROLMEN involved in payoffs receive their payoff on the first day of their 8 A.M. to 4 P.M. shift which comes up once a month on a rotating basis;" "HIGH RANKING officers receive their money from 'bagmen' who are usually lower-ranking officers or trusted civilian friends;" "They don't get paid enough so why shouldn't they take a bribe once in a while." Chief Inspector Frank Scafidi is quoted as saying that allegations of police corruption on a year's basis "go into the hundreds," while former Captain Robert Frederick is quoted as stating that " [police] corruption is systematic in the city." On its editorial page on November 17th, the Inquirer featured a cartoon of a police officer weighed down by

money bags standing aside of a "Yield" sign. An editorial on the same page stated: "When it becomes public knowledge that law enforcement authorities are lawless themselves and reap personal graft by protecting violators of the law instead of arresting them, the community can have no confidence of safety and security against forces of crime and corruption."

On January 18, 1972, plaintiffs, Klauder, Taylor, Howard, Lacuzio, Ryan and Gibbons, all highly decorated members of the Philadelphia Police Force, filed a class action alleging libel on behalf of themselves and all other Philadelphia policemen, approximately 8,200 in number. Named as defendants were Philadelphia Newspapers, Inc., publishers of The Inquirer, and John McMullan, executive editor of that newspaper. Defendants responded on February 8, 1972, with 17 preliminary objections, of which nine were sustained by the court on December 18, 1972. Pursuant to the court's order, plaintiffs filed an amended complaint on January 18, 1973, setting forth with greater particularity the language alleged to be libelous.

Defendants filed a second set of preliminary objections on February 2, 1973. Therein they assert by way of demurrer that the amended complaint fails to state a cause of action upon which relief can be granted, failing either to allege any language defamatory of plaintiffs individually or of all Philadelphia policemen generally. Defendants also attack the viability of this case as a class action. In this regard, they argue that plaintiffs have failed to define adequately the class they purport to represent or to allege their entitlement to represent the class, that plaintiffs have failed to allege any question of law or fact common to the class they purport to represent; and, generally, that plaintiffs have not alleged a sufficient basis to permit them to maintain their suit as a class

action pursuant to Pennsylvania Rule of Civil Procedure 2230. In addition, defendants have moved for a more specific pleading on the ground that the existing amended complaint fails to state the material facts upon which the cause of action is based.

## DISCUSSION

### A. *Requisites for a Libel Action*

It is a well-established rule of law, recognized in Pennsylvania by statute, that defamatory words cannot be actionable unless they apply to plaintiff: Act of August 21, 1953, P. L. 1291, 12 PS §1584a(1)(c); 100 A. L. R. 2d 227, Libel and slander: sufficiency of identification of plaintiff by matter complained of as defamatory. Defendants maintain that present plaintiffs fail to meet this requirement, either under the theory that plaintiffs have been defamed as individuals or under the rationale that the words at issue apply to them as members of a group.

Regarding individual defamation, it is recognized that plaintiff need not be mentioned by name so long as he is pointed to by description or other circumstance tending to identify him as an object of the libelous language: Schonek v. W. J. A. C., Inc., 436 Pa. 78, 83; 258 A. 2d 504, 507 (1969); Cosgrove Studio and Camera Shop v. Pane, 408 Pa. 314, 319; 182 A. 2d 751 (1962); 22 P. L. Encyc., Libel and Slander §17. Pennsylvania courts have recognized a variety of situations wherein an identification has been deemed sufficient despite the absence of reference to plaintiff's actual name: specific response to advertisement by business competitor (Cosgrove v. Pane, supra); reference to musical instrument played by plaintiff (Burkhart v. North American Company, 214 Pa. 39, 63 A. 410 (1906)); description of physical characteristics (Commonwealth v. Donaducy, 176 Pa. Superior Ct. 27, 107 A. 2d 139 (1954) ); reference to plaintiff's street ad-

dress: Costello v. Suleski, 61 D. & C. 2d 572 (1948). The occupation of the defamed person is also generally regarded as a proper consideration in determining whether adequate reference has been made to set forth a cause of action, 100 A. L. R. 2d 227, Libel and slander: sufficiency of identification of plaintiff by matter complained of as defamatory.

The real test in weighing identification is whether some nexus exists between plaintiff and the allegedly defamatory language. In the instant case, it is difficult to find any such connection. While the articles at issue contain numerous references to policemen in general, there is no allusion, however obscure, to any of the six named plaintiffs.

The situation here is somewhat similar to that in O'Donnell v. Wilkes Barre, 13 Luz. 89 (1906), wherein the court found that a defamatory reference to "certain officers" of a small locality was insufficient to identify plaintiff, a peace officer in that area. Cf. Schonek v. W. J. A. C., Inc., supra; Fisher v. Leader Publishing Co., 239 Pa. 200, 86 Atl. 776 (1913). Also instructive is Scelfo v. Rutgers University, 116 N. J. Super. 403, 282 A. 2d 445 (1971), where libel was alleged on the basis of a Newark newspaper headline which referred to "cops" as "racist pig bastards." The article was accompanied by a photo of two unidentified mounted policemen whose features were not discernible from the newspaper pictures. In granting summary judgment against two Newark mounted policemen, the court stated:

"In balancing the societal interest in free speech and press against the individual interest in reputation, courts have chosen not to limit the former except to prevent injury from defamatory statements reasonably susceptible of a definite application to a particular individual. Rosenblatt v. Baer, 383 U.S. 75, 86 Superior Court 669, 15 L. Ed. 2d 597 (1966). Plaintiffs

have not presented evidence for a finding that the article referred specifically to plaintiffs, or that it was reasonably believed by some person aware of the article that the plaintiffs were in fact intended": 282 A. 2d at 448.

Likewise, it certainly seems clear in this case that the defamatory writings lack the requisite specificity of reference to plaintiffs. Accordingly, defendants' second preliminary objection must be sustained.

As an alternative basis for this action, plaintiffs invoke the theory of class libel, their argument being that they are members of a class which was so defamed in toto that each person belonging thereto sustained damage as an individual. It is important to emphasize that this approach does not change the basic nature of libel as a uniquely personalized action. Libel and slander, unlike any other category of tort, abate with the death of the injured party.[1] Members of a family may not sue for defamation of a relative,[2] and personal application must always be shown by a plaintiff alleging defamatory language.[3] Thus, even in utilizing the group defamation rationale, the cause of action always rests with the individual, not with the group. Plaintiff does not sue because the group itself is defamed, but rather because his membership in the group would cause a reasonable person to identify him as a target of the defamatory words: Schonek v. W. J. A. C., Inc., 436 Pa. 78, 258 A. 2d 504 (1969); Farrell v. Triangle Publications, 399 Pa. 102, 159 A. 2d 734 (1960).

Given this rule of law, commentators have stressed the importance of group size in determining whether a plaintiff can maintain a cause of action under the theory of class libel:

[1] 20 PS §3371.

[2] Redding v. Dun and Bradstreet, 4 D. & C. 2d 459 (1969).

[3] 12 PS §1584(1)(c).

"The size of the group to which the defamatory allusion is made has been the most significant factor in determining whether relief should be granted. Where the group is small there is great likelihood that others will understand that the defendant intended to attribute certain qualities, beliefs, or acts to each member. Moreover, others are more likely to believe the statement to be based on information concerning each particular individual rather than that it is a generalization drawn from the observation of a few. As the group becomes larger, it is less likely that the statement will be understood as referring to each member of the group and its character as a generalization becomes clearer": Note, Developments in the Law-Defamation, 69 Harv. L. Rev. 875, 894 (1956).

"Two or more persons may of course be defamed by the same publication. But difficulties arise when the defamatory words are directed at a group or class of persons rather than an individual. The plaintiff must first of all show that he is in fact a member of the class defamed. Beyond this, he must establish some reasonable personal application of the words to himself. If the group is a very large one, as in the case of such words as 'all lawyers are shysters,' they are considered to have no application to anyone in particular, since one might as well defame all mankind. Not only does the group as such have no action, but the plaintiff does not establish any personal reference to himself. But if the plaintiff is the only lawyer present, or for some other reason the words are reasonably understood by the hearers to be directed individually at him, the personal application may be made to appear, by pleading and proof of the special circumstances by way of inducement, and the innuendo.

"The rule has been applied quite uniformly to comparatively large groups or classes of a definite number, exceeding, say twenty-five persons. When the group

becomes smaller than that, as in the case of a jury, a family, an election board, or the four officers of an association, the courts have been willing to permit the conclusion that the finger of defamation is pointed at each individual . . ." Prosser, Torts, ch. 19, §111, pp. 749-50-51 (4th ed. 1971).

Similar rules regarding the importance of size in the class defamation setting are stated in Restatement, Torts, §564, comment (c) pp. 151-52 (1938); Annotation, 97 A. L. R. 281 (1935); 1 Harper and James, Torts, §30.7, pp. 1700-1704 (1956). For a critical appraisal of the approach, see Riesman, Group Libel, 42 Columbia L. Rev. 727 (May 1942).

The class size rationale was adopted by the Pennsylvania Supreme Court in Farrell v. Triangle Publications, supra, wherein the court stated:

"Where a defamatory publication or utterance is directed toward a class or group whose membership is so numerous that no one individual member can reasonably be deemed an intended object of the defamatory matter, no cause of action for libel or slander arises therefrom. For example, if someone should speak or write defamatorily of all the members of one of the professions, such as the law, medicine or ministry, no particular lawyer, doctor or minister could maintain a personal action for the defamation for the reason that no one would be sufficiently identified as an object thereof to justifiably warrant a conclusion that his individual reputation had been substantially injured. Where, however, a defamatory publication or utterance is directed toward a comparatively small class or group all of whose constituent members may be readily identified and the recipients of the defamatory matter are likely to identify some if not all, of them as intended objects of the defamation, an individual member of the group may sue for the damages done his reputation thereby": 399 Pa., at 104-05.

To the same effect is Gordon v. Random House, 349 F. Supp. 919, 923 (E. D. Pa., 1972), where the court, by way of dictum, stated that "[d]efamation of a large class or group is not per se actionable by a member thereof." See also Mick v. American Rental Assn., 49 N. J. Super. 262, 139 A. 2d 570 (1958); Robinson v. Guy Gannett Publishing Company, 297 F. Supp. 722 (D. Maine, 1969); 22 P. L. Encyc. Libel and Slander, §17; Sum. Pa. Jur., Torts, §422.

In accord with this rule, the Pennsylvania group libel decisions holding for plaintiffs have involved relatively small numbers of persons. In Farrell v. Triangle Publications, supra, the Supreme Court held that an action could be brought by one of 13 township commissioners who collectively had been accused of involvement in a corrupt transaction. In Krupa v. Bristol Printing, 10 Bucks 138 (1960), plaintiff was one of a group of five criminal defendants, while in Haverillo v. Lembick, 18 Luz. 183 (1915), the action was brought by officials of an ethnic organization, all of whose "head officers" had been charged with stealing.

On the other side of the line is Schonek v. W. J. A. C., Inc., supra, where the Supreme Court affirmed summary judgment against plaintiff who alleged that he was a member of a civic "truth" committee that had been named in a libelous publication. In rejecting plaintiff's class defamation argument, the court stated:

"In plaintiff's own deposition he indicated that the Truth Committee consisted of a large number of people, enough to more than fill the Westmont Fire Hall—possibly several hundred. In such a situation the statements could not be reasonbly understood to have any personal application to any individual": 436 Pa. at 84.

Plaintiffs' recitation of foreign citations fails to blunt the thrust of this Pennsylvania decision. Indeed, none

of the precedents listed in plaintiffs' briefs deal with a class as large as that asserted herein: Fawcett Publications v. Morris, 377 P. 2d 42 (Okla. 1962), cited by plaintiffs as the leading case on this subject, involved a football team of some 60 players, a far cry from the 8,200 or more persons comprising the class at issue.

The situation sub judice is most analogous to that faced by the California Court of Appeals in Los Angeles Fire and Police Protective League v. Rodgers, 86 Cal. Rptr. 623, 7 Cal. App. 3d 419 (1970). There, a class action was brought on behalf of nearly 5,000 members of the Los Angeles Police Department, alleging defamation as a result of several radio broadcasts charging acts of police brutality. In addition to holding that the action failed to meet the procedural standards for maintenance as a class action, the court ruled, as a matter of substantive law, that an action cannot be brought for alleged defamation of such a large group of persons. To the same effect was the ruling of the California Court of Appeals in Mullins v. Brando, 91 Cal. Rptr. 796, 13 Cal. App. 3d 409 (1970), cert. den. 403 U. S. 923, which dealt with a defamation class action brought on behalf of the 650 members of the Oakland Police Officers Association. Even after assuming, arguendo, that the litigation met the procedural requirements for class action status, the court found that "the case must fall on very basic traditional defamation principles." With reference to the Restatement, Prosser and American Law Reports, noted supra, the California court stated: "It seems obvious that if no single member of OPCA could have stated a cause of action against defendant, neither can all of them together. Zero plus zero equals zero": 13 Cal. App. 3d 409, 423.

The requirements of libel law noted by the California courts also dictate dismissal of the instant action. The

fact that this case is brought as a class suit does not overcome the problem of making out a cause of action on behalf of the named plaintiffs. The foreword to the Pennsylvania Rules of Civil Procedure, as approved by the legislature, specifically notes that the substantive law of libel and slander is not affected by procedural rules: 12 PS §§731-1820, at page xxix. The cause of action always rests with the individual not with the group, and unless the substantive requirements of libel law are satisfied by the named plaintiffs, there can be no recovery by the class they purport to represent. Here, the connection between named plaintiffs and the Inquirer article is simply too tenuous to support a cause of action. Even under group defamation theory, plaintiffs have failed to show how they can be regarded as objects of the alleged libel. Therefore, pursuant to this finding, defendants' first and second preliminary objections are sustained. Defendants' third preliminary objection, that plaintiffs have failed to allege any language defamatory of all Philadelphia policemen, is beside the point inasmuch as individual identification is the sine qua non of a libel action. As an insufficient ground for dismissal of the action, this objection is overruled.

B. *Class Action Status*

The class action aspects of the litigation are governed by Rule 2230(a) of the Pennsylvania Rules of Civil Procedure:

"If persons constituting a class are so numerous as to make it impracticable to join all as parties, any one or more of them who will adequately represent the interest of all may sue or be sued on behalf of all, but the judgment entered in such action shall not impose personal liability upon any one not a party thereto": 12 PS App. Pa.R.C.P. 2230.

The note to this rule, adopted in 1940, states:

"This subdivision adopts the practice under Pennsylvania Equity Rule 16 and F. R. C. P. No. 23(a), 28 U. S. C. A., in providing for a class suit where the members of a class are so numerous as to make it impractical to join all as parties."

Consequently, in interpreting the Commonwealth statute, Pennsylvania courts have virtually adopted all of the Federal class action practices, generally relying on Federal decisions under Rule 23: School District of Philadelphia v. Bookbinders Seafood House, et al., (C.P. Phila., February term, 1971, no. 2915); Graber, et al. v. International Creditors Corp. (C.P. Phila., March term, 1970, no. 546); Charles v. Crestview Properties, Inc., 15 D. & C. 2d 568 (C.P. Dauph. 1957); Noonan v. McGuire, 11 D. & C. 2d 513 (C.P. Allegheny, 1956); Federation of Salaried Unions v. Westinghouse, 7 D. & C. 2d 281 (C.P. Allegheny, 1956); Callen v. Callen, 83 D. & C. 212 (C.P. Mercer, 1952); Guter v. Donaldson Iron Co., 69 D. & C. 150 (C.P. Lehigh, 1948); Farrell v. Livingston Apartments, 79 D. & C. 280 (C.P. Lehigh, 1951); 4 Anderson, Pa. Civ. Prac. §2230.1 (1962 ed.)

The relevant portions of Rule 23, F. R. C. P., as amended in 1966, provide as follows:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

". . .

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

There can be no doubt that plaintiff's alleged class of 8,200 persons meets the numerosity requirement set forth in Rule 23(a)(1). Questions arise as to the definition of the class, for plaintiffs fail to make clear whether they purport to represent all Philadelphia policemen as of the date of the amended complaint or as of the time of the allegedly libelous publication. This is not an insurmountable problem, and if class defini-

tion were the only obstacle to maintenance of the class action, plaintiffs would clearly be entitled to further amend their complaint on this point. However, more serious difficulties arise as to the other prerequisites under Rule 23, especially the requirement that common issues of law or fact predominate over questions affecting only individual members: Rule 23(b)(3). Courts have held that an action can be brought under (b)(3) even though there is not a complete identity of facts relating to all class members, so long as a "common nucleus of operative facts" is present: Esplin v. Hirschi, 402 F. 2d 94, 99 (10th Cir., 1968), cert. denied 394 U. S. 928; Illinois v. Harper & Row Publishers, 301 F. Supp. 484, 488 (N.D. Ill. 1969). In particular courts have sustained motions under Rule 23 despite the existence of wide variations in degree of injury among individual class members. Rather than allow such differences to preclude class action status, it has been recognized that separate trials can be held for the common issue of liability on the one hand and for individual issues of damages on the other: Siegal v. Realty Equities Corporation of New York, 54 F. R. D. 420 (S.D. N.Y., 1972); Green v. Wolf Corporation, 406 F. 2d 291 (2d Cir., 1968).

However, in the instant case, liability itself is contingent upon individual factors. It is, of course, hornbook law that truth is an absolute defense to any action of libel.[4] Therefore, defendant's potential liability to each member of the Philadelphia police force depends on whether the charges of corruption were true as to each individual policeman. Such a situation would rapidly degenerate into multiple lawsuits separately tried, which is precisely what Rule 23(b)(3) prohibits. Amendments to Rule of Civil Procedure Advisory Committee's Notes, 39 F. R. D. 69, 103 (1966). Clearly, no

[4] P. L. Encyc., Libel and Slander, §52.

economy whatsoever would be gained if this suit were to be maintained as a class action since the court would still be required to determine the essential issue of liability on an individual basis. Cf. School District of Philadelphia v. Harper & Row Publishers, 267 F. Supp. 1001 (E.D. Pa. 1967).

It seems significant that despite the recent avalanche of class action cases in many areas of the law, no decision can be cited wherein class action status was upheld in the defamation setting. In the case most analogous to the one sub judice, Los Angeles Fire and Police Protective League v. Rodgers, supra, the court dismissed plaintiff's class action argument with the following language:

"Furthermore, defamation is a personal tort, and a cause of action for damages for defamation cannot be assigned [citations omitted]. In the present case, it is reasonable to conclude that among the 5,000 officers there would be different questions of law and fact with reference to issues such as to the reputation of each officer, malice by the defendants as to each officer, the defamatory nature of the statements as to each officer, and whether each officer would be required to post the undertaking required by section 830 of the Code of Civil Procedure": 7 Cal. App. 3d, 419, 425.

This reasoning applies equally well in the instant case. With the alleged tortfeasor's defenses depending on facts peculiar to each plaintiff, a class action in this situation would hardly be economical or expeditious. Individual questions clearly predominate and, accordingly, defendants' fifth and sixth preliminary objections are sustained. For reasons noted earlier, defendants' fourth preliminary objection is also sustained.

## ORDER

And now, to wit, October 15, 1973, upon consideration of defendants' preliminary objections, it is hereby

ordered that preliminary objections nos. 1, 2, 4, 5 and 6 are sustained, and preliminary objection no. 3 is overruled. Defendants' motion for a more specific pleading is denied and the amended complaint is dismissed; the prothonotary is directed to enter judgment for defendants herein.