NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2251
_____

FRANCIS X. CHENEY, II,
                              Appellant

v.

DAILY NEWS L.P.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-15-cv-01194)
District Judge:  Honorable Stewart Dalzell
_____

Argued June 21, 2016
Before:  FISHER, CHAGARES and BARRY, *Circuit Judges*.

(Filed: July 19, 2016)

James G. Begley, III, Esq.
James P. Goslee, Esq.        [ARGUED]
Cohen Placitella & Roth
2001 Market Street
Two Commerce Square, Suite 2900
Philadelphia, PA 19103
        *Counsel for Appellant*

Michael L. Berry, Esq.      [ARGUED]
Elizabeth Seidlin-Bernstein, Esq.
Levine Sullivan Koch & Schulz
1760 Market Street, Suite 1001
Philadelphia, PA 19103
        *Counsel for Appellee*

_____

OPINION[*]

_____

FISHER, *Circuit Judge*.

Francis X. Cheney II appeals the District Court's grant of the Daily News's motion to dismiss his claims for defamation, false light invasion of privacy, and intentional infliction of emotional distress. We will affirm in part and reverse in part.

I.

We write principally for the parties, who are familiar with the factual context and legal history of the case. Therefore, we will set forth only those facts that are necessary to our analysis.

On January 29, 2015, the Daily News published an article on its website entitled, "Heated Sex Scandal Surrounds Philadelphia Fire Department: 'It's Bad Stuff.'" The text of the article described a sex scandal within the Philadelphia Fire Department. According to the article, the investigation into the scandal, "implicates dozens of city employees, including … firefighters," and it was possible that such employees would be criminally charged.

The article consisted of two columns: the left column contained pictures, and the right column contained the text of the article. In the left column, a reader could toggle

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

between two photographs. The first photograph was of the silhouette of an unidentified firefighter outside of a burning building, captioned, "A Philadelphia firefighter climbs a ladder during a fire in Coatesville, Pa." Pertinent to this appeal, the second photograph was of Cheney and was captioned, "Philadelphia firefighter Francis Cheney holds a flag at a 9/11 ceremony in 2006." The photograph is focused on Cheney's arm patch, but his face, though out of focus, is visible. The following day, the Daily News published a second article concerning the scandal but did not include the photograph of Cheney.

Cheney, however, had no part in the scandal described in the article. According to him, after the article and his photograph were published, he was flooded with messages from his colleagues at the Philadelphia Fire Department, family, friends, and strangers.

Cheney filed suit in the Philadelphia County Court of Common Pleas, alleging claims of defamation, false light invasion of privacy, and intentional infliction of emotional distress. The Daily News timely removed the case to the Eastern District of Pennsylvania and moved to dismiss Cheney's complaint under Rule 12(b)(6). The District Court granted the Daily News's motion, holding that Cheney could not establish that the allegedly defamatory material—in the text of the articles—was capable of being reasonably understood as concerning him. Cheney timely appealed. We issued an opinion affirming the District Court, but after Cheney filed a petition for rehearing, we vacated that opinion and held oral argument.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332(a). We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of the Daily News's motion to dismiss. In considering an appeal from a dismissal under Rule 12(b)(6), we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231, 233 (3d Cir. 2008).

## III.

The District Court dismissed each of Cheney's three claims: (1) defamation; (2) false light invasion of privacy; and (3) intentional infliction of emotional distress. Cheney argues that this was error.

## 1.

Cheney first argues that the District Court erred in dismissing his defamation claim. To allege a claim of defamation under Pennsylvania law, Cheney must plead: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of the defamatory meaning; and (5) understanding by the recipient that it is intended to be applied to the plaintiff. 42 Pa. Cons. Stat. Ann. § 8343(a)(1)-(5); *Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014).

4

The District Court dismissed Cheney's claim because it failed the third element— the defamatory statement's application to the plaintiff. In accordance with this element, a defamatory statement "must refer to some ascertained or ascertainable person, and that person must be the plaintiff." *Schonek v. WJAC, Inc.*, 258 A.2d 504, 507 (Pa. 1969) (internal quotation marks omitted). Although the defamatory statement must refer to the plaintiff, the publication need not specifically name the plaintiff. *Id.* Rather, we look at the context and ask whether "the defamatory material was capable of being reasonably understood as intended to refer to the complainant." *Harris v. Easton Publ'g Co.*, 483 A.2d 1377, 1385 (Pa. Super. Ct. 1984). Despite the fact-intensive nature of the inquiry, the question is one of law for the court to decide. *Id.*

The District Court held that the defamatory material in the article was not capable of being reasonably understood as intended to refer to Cheney because the caption made it clear that Cheney's photograph was merely a stock photo, and nothing in the article suggested—either by reference or innuendo—that Cheney was involved in the scandal.

Although no case involves the precise set of facts presented here, the District Court relied on, *inter alia*, two cases, both of which illustrate how courts have interpreted what reasonable people would understand in the context of a defamatory article. In *Peck v. Tribune Co.*, 214 U.S. 185 (1909), the United States Supreme Court held that placing the plaintiff's photograph in an advertisement, even where the advertisement used another person's name, rendered the publication "of and concerning the plaintiff." The

5

Chicago Sunday Tribune ran a picture of a woman accompanied by an endorsement of whisky by Mrs. Schuman, but instead of publishing the picture of Mrs. Schuman, the newspaper included the picture of Ms. Peck, who was not a supporter of whisky. *Id.* at 188. The Supreme Court held that "[o]f course" the placement of Ms. Peck's picture next to the statements in the advertisement suggested that she had endorsed the whisky. *Id.* at 188-89.

The District Court distinguished *Peck* on the basis that it involved a photograph of a plaintiff who was incorrectly identified as someone else. It reasoned that in the Tribune's advertisement, the content of the publication clearly meant to refer to the accompanying photograph.

Although the District Court is correct that *Peck* is not directly on point, we disagree with the District Court that those facts are so distinguishable as to defeat Cheney's claim. Unlike *Peck*, in which the newspaper used the wrong picture but correctly identified the name of the endorser of whisky, the caption here actually named Cheney. In this respect, Cheney's claim that the article and photograph concerned him is stronger than Ms. Peck's claim that the advertisement in the Tribune concerned her. And although the advertisement in *Peck* undoubtedly meant to refer to the photograph of who was supposed to be Mrs. Schuman, we cannot say that a reasonable reader would not think the same is true of the Daily News article, which included a photograph of

6

Cheney—a Philadelphia firefighter identified by name—directly next to an article about Philadelphia firefighters.

Conversely, in *Schonek v. WJAC, Inc.*, 258 A.2d 504 (Pa. 1969), the Pennsylvania Supreme Court held that, although a broadcast contained defamatory statements, it did not defame the plaintiff because it did not charge the plaintiff with the conduct alleged in the defamatory statements. At issue were two broadcasts: the first broadcast accused a group called the Truth Committee of "'pilfering' and 'doctoring' a campaign document," and it questioned who was financing the Committee's activities. The second broadcast, which took place on the following day, identified the plaintiff as one of the leaders of the group who was financing its activities. In particular, the second broadcast noted that the plaintiff had financed a state senator's campaign and was currently spending money to defeat a town's consolidation movement. But importantly, the first broadcast did not include any mention of the plaintiff, either by naming him or by insinuating he was involved in pilfering the document. And the second broadcast, which did name the plaintiff, did not reference the pilfered document. *Id.* at 506-07. The Pennsylvania Supreme Court held that no reasonable man would find a basis for the plaintiff's claim that the statement in the broadcasts accused him of the pilfering. *Id.* at 507.

The District Court found *Schonek* analogous because the Daily News article reported that some firefighters were engaged in sexual misconduct while an accompanying photograph identified Cheney as a firefighter.

7

Although *Schonek* bears some similarities to the facts in this case, it is not dispositive. There, even taking the two broadcasts together, there was no implication that the plaintiff was the subject of the defamatory statements. The broadcasts accused the Truth Committee of using a pilfered document, but it stated only that the plaintiff had financed specific campaigns and initiatives of the Committee. Neither broadcast connected the financiers to the pilfered document. In this case, the Daily News article described a scandal in which dozens of firefighters were accused of scandalous behavior, and the caption identifying Cheney was the only reference to any firefighter. The photograph was placed directly next to the text of the article and underneath the headline introducing the scandal. Considering that many firefighters were implicated and Cheney's was the only name in the publication, a reasonable reader could conclude that the inclusion of his photograph and name meant to suggest that the text of the article concerned him.[1]

Because we hold that a reasonable person could understand that the Daily News article concerned Cheney, the District Court erred in dismissing Cheney's defamation claim on that basis.

---

[1] Under the standard articulated by the Pennsylvania Supreme Court, we must decide how a reasonable person would understand the article and its accompanying photograph. In this case, however, we have the benefit of Cheney's specific allegation that he was flooded with messages from his colleagues, family, and friends after the story was published. Although these reactions are not conclusive proof that a reasonable person would understand the publication to concern Cheney, *see N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 288-92 (1964), they are nonetheless relevant to our determination. And under the motion to dismiss standard, we must accept them as true. *Phillips*, 515 F.3d at 233.

2.

Cheney's second claim—false light invasion of privacy—was also dismissed by the District Court because Cheney could not "establish that the inclusion of his photograph is the type of 'discrete presentation of information in a fashion which renders the publication susceptible to inferences casting one in a false light.'" App. 10 (quoting *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1189 (Pa. Super. Ct. 1988)).

Pennsylvania has adopted the Restatement (Second) of Torts' definition of false light invasion of privacy:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability … if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977).

"Falsity" is defined broadly and can be established where "discrete presentation of information … renders the publication susceptible to inferences casting one in a false light…." *Larsen*, 543 A.2d at 1889. Necessary to the cause of action is the requirement that the defendant gave "publicity to a matter *concerning* another…." *Id.* at 1188 (emphasis added).

The District Court dismissed Cheney's false light invasion of privacy claim on the same erroneous basis for which it dismissed his defamation claim. Because we find that a reasonable reader could understand the article to be "of and concerning" Cheney, we hold

9

that the District Court also erred in dismissing Cheney's false light invasion of privacy claim.[2]

3.

Cheney's final argument is that the District Court erred in dismissing his claim for intentional infliction of emotional distress.

Section 46 of the Restatement (Second) of Torts sets forth the minimum elements required to satisfy the cause of action for intentional infliction of emotional distress. *Hoy v. Angelone*, 720 A.2d 745, 753-54 & n.10 (Pa. 1998). Under § 46, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts § 46(1).

In order to be considered "extreme and outrageous," the conduct "'must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Hoy*, 720 A.2d at 754 (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)). It is for the court to determine in the first instance whether

---

[2] In arguing that the District Court properly dismissed Cheney's false light invasion of privacy claim, the Daily News contends that we may affirm the District Court's dismissal on the alternative basis that Cheney failed to plead factual allegations sufficient to establish the article was published with actual malice. The District Court did not reach this issue. We take no position as to whether Cheney adequately pleaded actual malice.

the conduct is extreme and outrageous, such that recovery may be permitted. *Small v. Juniata College*, 682 A.2d 350, 355 (Pa. Super. Ct. 1996).

As the District Court correctly found, the article does not rise to the level of "extreme and outrageous." Pennsylvania courts have found extreme and outrageous conduct only in the most egregious of situations, such as mishandling of a corpse, reckless diagnosis of a fatal disease, and having sexual contact with young children. *See Salerno v. Phila. Newspapers, Inc.*, 546 A.2d 1168, 1172 (Pa. Super. Ct. 1988) (collecting cases). Although suggesting that a person is involved in a sex scandal is unfortunate, it does not rise to the level of conduct necessary to state a cause of action for intentional infliction of emotional distress under Pennsylvania law.

Under this standard, and accepting all of Cheney's allegations as true, publication of a defamatory article suggesting Cheney was involved in a sex scandal cannot support a cause of action for intentional infliction of emotional distress. Thus, the District Court did not err in dismissing Cheney's intentional infliction of emotional distress claim.

IV.

For the foregoing reasons, we will affirm the District Court's dismissal of Cheney's intentional infliction of emotional distress claim. We will reverse the District Court's dismissal of Cheney's claims for defamation and false light invasion of privacy and remand to the District Court for further proceedings consistent with this opinion.