J-E03003-16

2017 PA Super 397

| ELLIOT MENKOWITZ, M.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PEERLESS PUBLICATIONS, INC. | : | No. 2048 EDA 2014 |
| AND ERIC ENGQUIST | : | |

Appeal from the Judgment Entered July 23, 2014
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): No. 98-07291

| ELLIOT MENKOWITZ, M.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PEERLESS PUBLICATIONS, INC. & | : | |
| ERIC ENGQUIST | : | |
| | : | No. 2096 EDA 2014 |
| Appellants | : | |

Appeal from the Judgment Entered July 23, 2014
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 98-07291

BEFORE: BENDER, P.J.E., BOWES, J., PANELLA, J., LAZARUS, J., OTT, J.,
STABILE, J., DUBOW, J., MOULTON, J., and RANSOM, J.

CONCURRING OPINION BY BOWES, J.: **FILED DECEMBER 15, 2017**

I agree with the well-reasoned opinion of my distinguished colleague,

Judge Stabile, in every respect except one. In determining whether the article

was capable of the defamatory meanings ascribed to it by the Plaintiff, the

majority, like the trial court, improperly confines its analysis to the statement:

"Dr. Menkowitz's sudden absence from the hospital has spawned rampant rumors of professional misconduct involving the treatment of an older, female patient." Mrs. Menkowitz testified that one could believe from these words that Dr. Menkowitz had been accused of sexual misconduct; the couple's son stated that the words could mean sexual misconduct or medical malpractice; Attorney Jeffrey Krawitz testified that he thought Dr. Menkowitz was indicted for sexual misconduct, although he could not link that belief to the article in question. I submit that these innuendos were simply not "warranted, justified and supported by the publication" as a whole. *Livingston v. Murray*, 612 A.2d 443, 449 (Pa.Super. 1992).

Defamation by implication was designed to permit recovery where **innocent** words, even though literally true, created a false defamatory implication when considered in the context of the entire publication.[1] In

---

[1] I heartily agree with the majority that the statement "rampant rumors of professional misconduct involving the treatment of an older, female patient," was defamatory *per se*, actionable on that basis, but true. That same statement furnished the basis for the defamation by implication claim even though it did not consist of innocent words. I do not believe that a defamation by implication claim based on those *per se* defamatory words was viable, but since the Newspaper did not challenge the implication claim on that basis, that issue is not before us.

Nonetheless, I believe the instant case illustrates the problem when a plaintiff proceeds on both defamation *per se* and implication theories premised on the same words. *Cf. ToDay's Housing v. Times Shamrock Communications, Inc.*, 21 A.3d 1209 (Pa.Super. 2011) (where both types of defamation were alleged but the defamatory implication was not derived from defamatory *per se* statements but from innocent words). In the process of rebutting the falsity

implication cases, the trial court is charged with determining, as a matter of law, whether the publication is reasonably and justifiably capable of the defamatory innuendos assigned to it by the plaintiff. The trial court herein did not make that threshold determination. Rather, the court improperly treated the issue as one of sufficiency of the evidence, noted that Plaintiff produced evidence that the statement implied a defamatory meaning, and concluded that, "the statements could be interpreted as defamatory." Trial Court Opinion, 9/19/14, at 14.[2] I believe that the innuendos were neither reasonable nor justifiable when viewed in the context of the publication as a whole.

The headline of the article announced that the Hospital had suspended a physician. In the first paragraph, the physician was identified as Dr. Menkowitz, and the Newspaper accurately reported that he had been "suspended for six months" "after a 'peer review' by the hospital's medical executive committee and its board of directors." The subsequent allusion to Dr. Menkowitz's "sudden absence" from the hospital was an obvious reference

_____

of the defamatory *per se* statement with proof of its truth, a defendant unwittingly proves the falsity of the innuendo and exposes itself to liability under that theory. Truth as a defense to defamation *per se* is eviscerated in this scenario.

[2]The trial court concluded, "It was not error for the court to submit the question of whether the Article had a defamatory meaning to the jury. The jury had sufficient evidence to conclude the Article could be interpreted as defamatory." Trial Court Opinion, 9/14/14, at 16.

to the suspension, negating the inference posited by the majority that he fled to avoid criminal prosecution.

Although the majority imputes salaciousness to the words "rampant rumors," I do not believe that implication is fair from the context. Prior to stating that Dr. Menkowitz's "sudden absence has spawned rampant rumors of professional misconduct," the Newspaper reported that the Hospital had declined to comment on the suspension due to "internal peer review," and that Dr. Menkowitz had refused repeated requests for comment. When Dr. Michael Pawlowski, a colleague of Dr. Menkowitz, was interviewed for the article, he reportedly denied any knowledge of the reason for the suspension, but added, "You hear rumors, but I'm not aware of any details." The article recited, "Six other current or former members of the medical executive committee . . . and hospital President John Buckley did not return calls from the [Newspaper]." I submit that the reference to "rampant rumors" merely underscored that, in the absence of official comment on the reason for the suspension, there was speculation and rumors.

The term "professional misconduct" must be viewed in the context of the reported suspension. Medical malpractice or professional negligence is the typical nomenclature used to refer to a physician's sub-par performance of his medical specialty, and it more commonly results in lawsuits than suspensions. Furthermore, I part ways with my colleagues in the majority who believe that mentioning the gender of a person purportedly involved in

the incident of professional misconduct imputes sexual wrongdoing. In my mind, the report that the "professional misconduct" involved the physician's "**treatment** of an older female patient," thoroughly undercut any connotation of sexual or physical abuse.[3] (emphasis added). Finally, the implication that Dr. Menkowitz was criminally prosecuted for sexual abuse of a patient is simply untenable. Thus, unlike the majority, I believe that the proffered defamatory innuendos were unreasonable and unjustified when viewed in the context of the entire article.

The authorities relied upon by the majority support my position that the trial court should have analyzed the entire article to determine whether it was capable of conveying the alleged defamatory implications. In ***Dunlap v. Philadelphia Newspapers, Inc.***, 448 A.2d 6 (Pa.Super. 1982), the court examined the juxtaposition of the headlines, photographs, and captions, together with the content of the writing, before concluding that the article was capable of a defamatory meaning, *i.e.*, that Police Sergeant Dunlop was taking bribes. Although the words in the article were innocent and facially true, the article as a whole lent itself to a false defamatory meaning.

***Mzamane v. Winfrey***, 693 F.Supp.2d 442 (E.D. Pa. 2010), further buttresses my point. The district court, applying Pennsylvania law, examined

---

[3] Dr. Menkowitz's journalism expert, Professor Thomas Eveslage, opined that the words "professional misconduct regarding the treatment of an older, female patient, . . . implied to me that there was an incident involving a specific older female patient." N.T. Jury Trial Vol. III, 3/18/14, at 426.

Oprah Winfrey's press conference statements in their entirety to determine whether they were reasonably capable of the inference suggested by plaintiff, *i.e.*, that she was not retained as headmistress because she had played some role in harming students.

Finally, in **Cheney v. Daily News L.P.**, 654 Fed. Appx. 578 (3rd Cir. 2016), the court found a viable defamation by implication claim under Pennsylvania law after thoroughly examining an article about a sex scandal in the fire department appearing on the newspaper's website. Two photographs adjacent to the text of the article depicted firefighters, one of whom was identified as Cheney. Since Cheney was the only firefighter identified, the court found that a reasonable person could infer that he was involved in the scandal.

The aforementioned approach to defamation by implication is well settled. In **Sarkees v. Warner-West Corp.**, 37 A.2d 544, 546 (Pa. 1944), the court rejected the contention that one could reasonably infer from an advertisement for a leased space previously occupied by the plaintiff's business that he was financially unable to carry on his business and was being evicted. A demurrer was properly sustained as nothing in the advertisement justified the meaning ascribed to the innuendo.

In **Thomas Merton Center**, **supra**, a Rockwell official was quoted as stating that the Soviet Union was "secretly funding" opponents of the B-1 bomber, and later in the article, he identified the Thomas Merton Center as an

opponent. The Center charged that the article was defamatory as it implied that the Center was actively and knowingly aiding the Soviet Union. Our Supreme Court disagreed, finding that the words could not reasonably be read to allege that the Thomas Merton Center had knowledge of the purported funding.

I believe this to be an instance where the Plaintiff used innuendo "to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear[.]" **Sarkees**, **supra** at 546. Unlike the majority, I would find that the trial court erred in treating its threshold determination as one of sufficiency of the evidence, and in concluding that the evidence supported the allegedly defamatory innuendos. Furthermore, I believe that the proffered innuendos were unjustified and reasonable when read in the context of the entire article, and that the defamation by implication claim should not have been submitted to the jury. However, since the resolution of this issue has no bearing on our ultimate disposition of the within appeal, I respectfully concur.

Judge Ott, Judge Dubow and Judge Moulton join this concurring opinion.